PBBPC, INC., f/k/a Biopure
Corporation, Debtor.

Massachusetts Department of
Unemployment Assistance,
Appellant,

v.

OPK Biotech, LLC, Appellee.

BAP No. MB 12–042.
Bankruptcy No. 09–16725–FJB.

United States Bankruptcy Appellate Panel
of the First Circuit.

Jan. 17, 2013.

Daniel J. Hammond, Esq., and Douglas S. Martland, Esq., Boston, MA, on brief for Appellant.

Douglas B. Rosner, Esq., and Gregory O. Kaden, Esq., Boston, MA, on brief for Appellee.

Before HAINES, DEASY, and TESTER, United States Bankruptcy Appellate Panel Judges.

DEASY, Bankruptcy Judge.

The Massachusetts Department of Unemployment Assistance (the "DUA")[1] appeals from the bankruptcy court order (the "Order") enforcing the sale of the debtor's assets free and clear of any interest in said assets, including the DUA's right to tax the purchaser at the debtor's unemployment contribution rate. For the reasons set forth below, the Order is **AFFIRMED**.

## BACKGROUND

### I. The Sale

The debtor, PBBPC, Inc., formerly known as Biopure Corporation (the "Debtor"), filed a petition for chapter 11 relief on July 16, 2009. At that time, the Debtor had limited operations and only five employees. On the petition date, the Debtor filed a motion seeking approval of bid procedures and ultimately the sale of substantially all of its operating assets[2] to OPK Biotech, LLC ("OPK"), free and clear of liens, claims, charges, security interests, restrictions, and encumbrances of any kind

---

1. References to the Appellant in the record alternate between the "Division of Unemployment Assistance," the "Department of Unemployment of Assistance," and the "Commonwealth of Massachusetts, Department of Workforce Development." For consistency's sake, this opinion refers to the Appellant as the "Department of Unemployment Assistance" or the "DUA."

2. The proposed sale did not include real estate in Cambridge, Massachusetts, which the Debtor sold to an affiliate of OPK by separate motion and order.

or nature, pursuant to § 363(f).[3] The Debtor served the court approved notices and orders related to the auction and sale (the "Sale Notices") on, *inter alia,* the attorney general for the Commonwealth of Massachusetts at One Ashburton Place, Boston, Massachusetts.[4]

On August 20, 2009, the bankruptcy court entered an order approving the sale to OPK (the "Sale Order"). The Sale Order provided, among other things, that: (1) the transfer to OPK would be free and clear of all encumbrances, including any claims pursuant to any successor or successor-in-interest liability theory; (2) OPK would not be deemed a successor of the Debtor; and (3) OPK would not have any liability for any obligation of the Debtor or any claim against the Debtor related to the purchased assets by reason of the transfer of such assets.

In the Sale Order, the bankruptcy court found that OPK would not have purchased the Debtor's assets unless the transfer was "free and clear of all [e]ncumbrances of any kind or nature" including, but not limited to, successor liabilities for unemployment related claims including "claims that might arise under ... state unem-

ployment compensation laws or any other similar state laws." Additionally, the Sale Order provided that, except as otherwise specifically set forth in the Asset Purchase Agreement, OPK neither assumed nor was obligated to pay or otherwise discharge any debts, obligations, or liabilities of the Debtor arising pursuant to the Debtor's ownership or operation of its facilities before the purchase.

OPK closed on the purchase of the Debtor's operating assets on September 9, 2009, and commenced operations in Massachusetts on October 1, 2009. Prior to the closing, the Debtor had terminated all but one of its remaining employees. Because the Debtor had laid off nearly all of its employees at the end of 2008, its experience rating was very high, which resulted in an unemployment contribution rate of 12.27 percent.[5]

## II. The DUA Proceedings

Following the closing, OPK advised the DUA of its acquisition of the Debtor's assets. The DUA, in turn, notified OPK that it was considered a "successor employer" within the meaning of the Massachusetts unemployment insurance statute,[6]

3. All references to the "Code" or the "Bankruptcy Code" are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. § 101, *et seq.* Unless otherwise indicated, all references to statutory sections are to sections of the Code.

4. The local rules for the United States Bankruptcy Court for the District of Massachusetts provide that:

Whenever notice is required to be given to the Massachusetts Division of Unemployment Assistance, it shall be mailed to:
Commonwealth of Massachusetts
Department of Unemployment Assistance
Legal Department, 1st Floor, Attn. Chief counsel
19 Staniford Street Boston, MA 02114
MLBR App. 4(f).

5. Mass. Gen. Laws ch. 151A, § 14(a)(1), defines "Experience rate" as "the contribution

rate which conforms to the reserve percentage of an employer's account under subsection (i) of this section." Mass. Gen. Laws ch. 151A, § 14(i), provides, in pertinent part, that the "contribution rate of each employer shall be five and four-tenths percent of that part of its payroll subject to this chapter...."

6. Chapter 151A of the Massachusetts General Laws is the Massachusetts unemployment insurance statute. Section 14(n)(1) of that statute provides, in relevant part, that "[i]f the entire organization, trade or business of an employer, or substantially all the assets thereof, are transferred to another employer ..., the transferee shall be considered a successor...." Mass. Gen. Laws ch. 151A, § 14(n)(1) (2012). Section 14(n)(2) of that statute further provides, in relevant part, that the "successor shall take over and continue

that the Debtor's account had been transferred to it, and that OPK's contribution rate for 2009 and 2010 was 12.27 percent. The DUA further advised OPK that as a successor employer, it was "liable for any past or future benefit charges attributable to the predecessor[']s account." The record reflects that the DUA continued to impose a 12.27 percent contribution rate for 2011.

OPK filed an administrative appeal, challenging the DUA's imposition of successor status on the grounds that OPK and the Debtor lacked substantially common ownership, interest, or control, which might give rise to a successor relationship under the Massachusetts unemployment insurance statute. The DUA refused to change its determination. Consequently, in March 2011, OPK moved the bankruptcy court to enforce the Sale Order (the "Motion to Enforce"), and the parties agreed to postpone further administrative proceedings pending the bankruptcy court's disposition of the motion.

### III. The Bankruptcy Court Proceedings

In the Motion to Enforce, OPK sought an order: (1) declaring that the sale to OPK was free and clear of the Debtor's experience rate and contribution rate as those terms are defined in state law; (2) requiring the DUA to refund to OPK overpayments resulting from the attribution of the Debtor's experience rate; and (3) compelling the DUA to assign to OPK a 2.89 percent contribution rate as an employer newly subject to Mass. Gen. Laws ch. 151A, § 14, retroactive to the sale date and without regard to the Debtor's pre-sale ratings.

In support of its request, OPK advanced five core arguments. First, OPK asserted

that because the Debtor served the Sale Notices on the attorney general of the Commonwealth of Massachusetts, and neither the Commonwealth nor the DUA objected, the DUA irrevocably waived its right to object to the sale itself or the terms of the Sale Order. Second, OPK contended that § 363(m) protected the Sale Order from attack and reconsideration. Third, OPK asserted that, even assuming the Sale Order was subject to attack, the proper vehicle would have been a motion to reconsider or modify the order. Fourth, OPK argued that the bankruptcy court should enforce the Sale Order because at least four of the five disjunctive requirements for a sale free and clear under § 363(f) were satisfied. Lastly, OPK asserted that even if the DUA had timely objected to the Sale Notices, § 363(f) and the underlying policies of the Bankruptcy Code preempted the successor liability provision in the Commonwealth's unemployment compensation statute.

In its opposition to the Motion to Enforce, the DUA maintained that the Debtor's service of the Sale Notices did not conform to MLBR App. 4(f), and that the DUA had not otherwise received notice of the Sale Notices. Because notice was allegedly inadequate, the DUA argued that it was permitted to challenge the Sale Notices and the Sale Order. Second, the DUA claimed that OPK did not meet the conditions for a sale free and clear under § 363(f) because: (1) its lack of objection did not constitute consent, in the absence of proper notice; and (2) a money satisfaction was not possible. Third, the DUA argued, "while prohibiting the transfer of the Debtor's experience account to OPK [might] enhance the payment to creditors, such enhancement would come at the ex-

---

employer's account, including its plus or minus balance and all other aspects of its experi-

ence under this chapter." Mass. Gen. Laws ch. 151A, § 14(n)(2) (2012).

pense of all other Massachusetts employers." Fourth, and most significantly for purposes of this appeal, the DUA asserted that the Debtor's experience rating was not an interest within the meaning of § 363(f) and, therefore, the bankruptcy court lacked authority to protect OPK from taxation on the basis of the Debtor's experience rating. For this proposition, the DUA relied heavily on *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.)*, 930 F.2d 1132, 1145–49 (6th Cir.1991). Lastly, the DUA contended that it correctly determined that OPK was a successor within the meaning of the Massachusetts unemployment insurance statute.

## IV. The Bankruptcy Court Decision

After notice and a hearing in June 2011, the bankruptcy court took the matter under advisement. In February 2012, the bankruptcy court issued its Memorandum of Decision, wherein it held that the Debtor's experience and contribution rate were interests within the meaning of § 363. *See In re PBBPC, Inc.*, 467 B.R. 1 (Bankr. D.Mass.2012). In reaching this conclusion, the court determined as a preliminary matter that it had authority to revisit the Sale Order on two grounds. First, it found that the DUA did not receive proper notice of the sale. Accordingly, the court stated, "[a] judgment obtained without notice to a party is invalid against that party and therefore can have no preclusive effect as to that party." *Id.* at 7. Second, the bankruptcy court concluded that it need not address OPK's argument that the Sale Order was protected from collateral attack by § 363(m), reasoning as follows:

> This argument requires a difficult decision as to whether [ ] § 363(m), and the policy of finality it embodies, should override constitutional concerns about lack of notice. However, were the Court to find that the Sale Order is now subject to collateral attack and reconsid-

er the merits in light of the objections and arguments the DUA now adduces, the Court would, for the reasons set forth below, conclude (i) that authority to sell pursuant to § 363(f) was properly granted and (ii) that the debtor's experience rating is an "interest" within the meaning of § 363(f) that, in view of the authorization under § 363(f), the Commonwealth may not apply to OPK. Accordingly, the court may sustain the Sale Order on the merits and need not address the § 363(m) issue.

*Id.* at 7–8 (footnote omitted). The court's analysis then proceeded to the requirements of § 363(f). It readily found the presence of one the five predicate conditions enumerated in § 363(f) for a sale free and clear, concluding that the DUA "could be compelled to accept a money satisfaction." *Id.* at 8.

Thus, the only issue that remained for the court to address was "whether the right of taxation that the DUA [was] charged with enforcing [was] an 'interest' in property of the estate within the meaning of § 363(f)." *Id.* For purposes of this analysis, the bankruptcy court "assume[d] without deciding that OPK [was] a successor employer within the meaning of" the applicable statute. *Id.* at 9. Acknowledging that an employer's contribution rate was an "atypical" interest in property, the court nonetheless determined that there was still:

> [A] good reason to view this right as an interest in estate assets: it imposes a debtor's experience rating on the buyer precisely because, and only because, the buyer purchased assets of the bankruptcy estate. By operation of the state statute, the debtor's experience rating travels with the assets and encumbers their purchaser.

*Id.* The court further concluded:

> [T]he relationship between the asset and the right in question is dispositive. The

clear relationship between the DUA's right to tax according to the debtor's experience rating and the asset transfer on which that right is predicated makes the DUA's right an interest within the meaning of § 363(f).

Section 363(f) therefore applies to the DUA's interest. As OPK argues and the DUA does not dispute, where § 363(f) does apply, it preempts any state law to the contrary. The [S]ale [O]rder thus preempts the application of successor status to OPK under [Mass. Gen. Laws ch.] 151A, § 14.

*Id.* at 10.

Noting the absence of binding First Circuit precedent, in reaching the foregoing conclusion, the bankruptcy court embraced the reasoning of *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.),* 99 F.3d 573, 581–82 (4th Cir.1986) (holding that Congress did not expressly indicate that it intended to limit the scope of "interests in property" in § 363(f) to *in rem* interests). It simultaneously rejected as "unsatisfying" and "wrongly decided" the case relied upon by the DUA, *Wolverine Radio, supra* (holding experience rating was not an interest within the meaning of § 363(f)). *PBBPC,* 467 B.R. at 10. The bankruptcy court concluded the Memorandum of Decision by indicating that it would enter an order:

(i) declaring that the sale to OPK pursuant to the Sale Order was free and clear of the Debtor's experience rate and contribution rate as those terms are defined in Mass. Gen. Laws c[h]. 151A, § 14, and (ii) requiring the DUA to refund to OPK overpayments attributable to its attribu-

tion to OPK of the Debtor's experience rate.

*Id.*

Thereafter, the DUA and OPK entered into a stipulation, whereby they agreed that the DUA would assign to OPK the new non-construction employer experience rate of 2.83 percent, effective as of October 1, 2009, through the 2011 contribution year. The parties also agreed on the amount of OPK's overpayment and resulting refund. Thereafter, OPK sought court approval of the stipulation and a final order, as contemplated by the Memorandum of Decision. Accordingly, on July 2, 2012, the court entered the Order, which provided:

For the reasons set forth in the Court's earlier memorandum of decision [# 444] on OPK's Motion to Enforce Order Authorizing Sale [# 403], the Court hereby (i) declares that the sale to OPK pursuant to the Sale Order was free and clear of the Debtor's experience rate and contribution rate as those terms are defined in Mass. Gen. Laws c[h]. 151A, § 14, and (ii) orders the DUA to refund to OPK overpayments attributable to its attribution to OPK of the Debtor's experience rate. The Court further hereby allows the Motion of OPK to Approve Stipulation [# 444] and accordingly now approves the stipulation, which stipulation quantifies the refund required by this order and specifies the manner in which the refund has been and is to be effected.

This appeal followed.[7]

### *JURISDICTION*

A bankruptcy appellate panel is " 'duty-bound' " to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *See Boylan*

---

7. Although the DUA had previously attempted to appeal from the Memorandum of Decision, prior to the entry of the Order, the Panel dismissed that appeal as interlocutory.

*v. George E. Bumpus, Jr. Constr. Co., Inc. (In re George E. Bumpus, Jr. Constr. Co., Inc.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (quoting *Fleet Data Processing Corp v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998)). A panel may hear appeals from "final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *In re Bank of New England Corp.*, 218 B.R. at 645. "A decision is final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Id.* at 646 (internal quotations and citations omitted). Because the Order effectively terminated the litigation between the parties, it is final. Accordingly, we have jurisdiction.

### STANDARD OF REVIEW

■■■■ A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See Lessard v. Wilton–Lyndeborough Coop. School Dist.*, 592 F.3d 267, 269 (1st Cir.2010). The bankruptcy court's interpretation of particular statutes is a question of law which the Panel reviews *de novo*. *United States v. Sterling Consulting Corp. (In re Indian Motocycle Co., Inc.)*, 261 B.R. 800, 805 (1st Cir. BAP 2001); *BankBoston, N.A. v. Claflin (In re Claflin)*, 249 B.R. 840, 842 (1st Cir. BAP 2000). Accordingly, we review the bankruptcy court's interpretation of § 363(f) *de novo*.

### DISCUSSION

#### I. The Issue on Appeal

■■■ In its statement of issues, the DUA identified the following issues on appeal: (1) whether the seller's experience rate is an interest within the meaning of § 363(f); and (2) if so, does § 363(f) preempt Mass. Gen. Laws ch. 151A, § 14(n). However, the DUA did not brief the second issue and, therefore, has waived it. *See Eakin v. Goffe, Inc. (In re 110 Beaver Street P'ship)*, 355 Fed.Appx. 432, 437 (1st Cir. 2009) ("An appellant waives any issue which it does not adequately raise in its initial brief."). Therefore, the sole issue on appeal is whether the DUA's right to tax OPK based on the Debtor's high experience rating is an interest in property within the meaning of § 363(f). That statute provides that:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). The parties do not dispute that at least one of the statutory conditions for approval of a sale free and clear of an interest in property is satisfied.

The DUA contends that a debtor's experience rating under Massachusetts unemployment insurance law is not an interest under § 363(f), relying primarily on the decision in *Wolverine Radio, supra*. The DUA argues that "using a debtor's employment history to calculate a loss expectation for a successor's experience rating is entirely unrelated to recouping an unpaid

prepetition obligation from the corporation." According to the DUA, a debtor's experience rating is not a vehicle to recapture an unpaid debt but, rather, "a simple, prognostic tool premised on the notion that the same business, with the same employees, is likely to have a similar number of unemployment claims, going forward." Accordingly, under this theory, a debtor's experience rating is not an interest in property within the meaning of § 363(f). Although the DUA acknowledges the "modern trend" of bankruptcy courts to ascribe a broad meaning to the term "any interest" as used in § 363, it argues that the bankruptcy court's "characterization of a debtor's experience rating as an interest goes too far."

OPK argues that the bankruptcy court properly determined that the Debtor's experience rating is an interest within the meaning of § 363(f). In support, OPK contends that this determination is consistent with: (1) the modern trend to view the term "interest" expansively; (2) the "fresh start" policy of the Bankruptcy Code; and (3) the purpose of sales free and clear under § 363(f) to "maximize the value of the asset, and thus enhance the payout made to creditors." OPK further argues that "[t]he transfer of substantially all of a debtor's assets to a third party alone triggers the DUA's statutory right" to tax such third party based on the debtor's experience rating. According to OPK, this nexus between a debtor's assets and the DUA's right to collect unemployment taxes at a certain rate supports the court's definition of "interest."

## II. The Meaning of "Any Interest" Under § 363(f)

■ The Bankruptcy Code does not define the term "any interest" as used in § 363(f). Courts confronted with the task of defining the scope of the term have been unable to supply a precise definition. Thus, the issue continues to be addressed on a case-by-case basis, with a review of relevant case law revealing a divergence of opinion. *See, e.g., Precision Indus., Inc. v. Qualitech Steel SBQ, LLC,* 327 F.3d 537, 545 (7th Cir.2003); *In re Trans World Airlines, Inc.,* 322 F.3d 283, 288–89 (3d Cir.2003); *Folger Adam Security, Inc. v. DeMatteis/MacGregor JV,* 209 F.3d 252, 258 (3d Cir.2000) (citation omitted).

Although some courts have narrowly construed "any interest" to mean only *in rem* interests in property, *see, e.g., Fairchild Aircraft Inc. v. Cambell (In re Fairchild Aircraft Corp.),* 184 B.R. 910, 917–19 (Bankr.W.D.Tex.1995), *vacated on other grounds,* 220 B.R. 909 (Bankr.W.D.Tex. 1998), others favor a broader interpretation, "which includes other obligations that may flow from ownership of the property." *Folger,* 209 F.3d at 258 (citing 3 *Collier on Bankruptcy* ¶ 363.06[1] ) (citing *Leckie,* 99 F.3d at 582) (holding that debtor coal mine operators could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute); *P.K.R. Convalescent Ctrs., Inc. v. Commonwealth of Va., Dep't of Med. Assistance Serv. (In re P.K.R. Convalescent Ctrs., Inc.),* 189 B.R. 90, 92– 94 (Bankr.E.D.Va.1995) (holding that § 363(f) permitted sale free and clear of state's depreciation-recapture interest in the debtor's property); *WBQ P'ship v. Commonwealth of Va. Dep't of Med. Assistance Servs. (In re WBQ P'ship),* 189 B.R. 97 (Bankr.E.D.Va.1995) (holding statutory right to recover depreciation was within "interests" under § 363(f)); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.),* 75 B.R. 944 (Bankr.N.D.Ohio 1987) (holding that § 363(f) precluded tort claims against asset purchaser).

The Seventh Circuit broadly interpreted the term "any interest" in § 363(f) when it determined that a lessee's possessory interest in a chapter 11 debtor's real property was an "interest" within the meaning of § 363(f):

> ... [T]he Code itself does not suggest that "interest" should be understood in a special or narrow sense; on the contrary, the use of the term "any" counsels in favor of a broad interpretation. *See United States v. Gonzales,* 520 U.S. 1, 5, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997). As commentators have pointed out, the Supreme Court elsewhere has observed that the term "interest" is a broad term no doubt selected by Congress to avoid "rigid and technical definitions drawn from other areas of the law...." *Russello v. United States,* 464 U.S. 16, 21, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983); *see* Steven R. Haydon & Nancy J. March, *Sale of Estate Property Free and Clear of Real Property Leasehold Interests Pursuant to § 363(f); An Unwritten Limitation?,* 19 American Bankr.Inst. J. 20, 20 (2000).... The *Russello* Court thus concluded that "interest," as used in the Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. § 1963(a)(1), "comprehends all forms of real and personal property, including profits and proceeds." 464 U.S. at 21, 104 S.Ct. at 299, 104 S.Ct. 296....

*Precision Indus., Inc.,* 327 F.3d at 545. The Seventh Circuit also noted that an inclusive interpretation of the phrase "any interest" is "consistent with the expansive use of that same phrase in other provisions of the Code." *Id.* (citing 11 U.S.C. §§ 541(a)(3), (4), and (7), which identify various interests comprising property of the estate).

In concluding that the coal mine operators could sell their assets free and clear of their obligations to a certain benefits plan and fund under the Coal Act, the Fourth Circuit rejected a restrictive view of the phrase "any interest," noting that:

> ... [W]hile the plain meaning of the phrase "interest in such property" suggests that not all general rights to payment are encompassed by the statute, Congress did not expressly indicate that, by employing such language, it intended to limit the scope of [§ ] 363(f) to *in rem* interests, strictly defined, and we decline to adopt such a restricted reading of the statute here.

*Leckie,* 99 F.3d at 582 (citations omitted). Persuaded by the right of the benefit plans to seek payment based upon the use of the assets sold in coal mining operations, the court concluded that the plans' right to payment constituted an "interest in property" within the meaning of § 363(f). *Id.* The court specifically held:

> [I]f Appellees had never elected to put their assets to use in the coal-mining industry, and had taken up business in an altogether different area, the Plan and Fund would have no right to seek premium payments from them. Because there is therefore a relationship between (1) the Fund's and Plan's rights to demand premium payments from Appellees and (2) the use to which Appellees put their assets, we find that the Fund and Plan have interests in those assets within the meaning of [§ ] 363(f).

*Id.* (footnote omitted). Thus, *Leckie* "seems to suggest that the term 'any interest' is intended to refer to obligations that are connected to, or arise from, the property being sold." *Folger,* 209 F.3d at 259 (citation omitted).

Post-*Leckie,* the Third Circuit similarly interpreted § 363's use of the term "interest in property" broadly in *Trans World Airlines.* There, the court held that the rights of flight attendants under a travel

voucher program that the debtor-airline had established in settlement of a sex discrimination action qualified as an "interest in property." *Trans World Airlines,* 322 F.3d at 288. The court reasoned that the term should be read broadly, in order "to authorize a bankruptcy court to bar any interest that could potentially travel with the property being sold." *Id.* As the Third Circuit further explained: "[t]he trend seems to be toward a more expansive reading of 'interests in property' which encompasses other obligations that may flow from ownership of the property." *Id.* at 289.

More recently, in *Indiana State Police Pension Trust v. Chrysler LLC (In re Chrysler LLC),* 576 F.3d 108, 126 (2d Cir. 2009), *cert. granted and judgment vacated on other grounds,* —— U.S. ——, 130 S.Ct. 1015, 175 L.Ed.2d 614 (2009), the Second Circuit utilized an expansive interpretation of "any interest" under § 363(f), in holding that the bankruptcy court was permitted to authorize the sale of substantially all of the debtor's auto manufacturing assets free and clear of product liability claims. The court noted that the "possibility of transferring assets free and clear of existing tort liability was a critical inducement to the [s]ale," and "was necessary in order to preserve some [55],000 jobs, . . . and to provide funding for employee-related liabilities, including retirement benefits. . . ." *Id.* (citation omitted). Accordingly, the Second Circuit ruled:

It is the transfer of Old Chrysler's tangible and intellectual property to New Chrysler that could lead to successor liability (where applicable under state law) in the absence of the Sale Order's liability provisions. Because appellants' claims arose from Old Chrysler's property, § 363(f) permitted the bankruptcy court to authorize the Sale free and clear of appellants' interest in the property.

*Id.*

■ We conclude that the more expansive reading of the term "any interest" advanced by the Seventh, Fourth, Third, and Second Circuits in the cases cited above is more consistent with the language of the Bankruptcy Code and the policy expressed in § 363. We therefore conclude that the term "any interest" as used in § 363(f) is sufficiently elastic to include the Debtor's experience rate. Indeed, the record reflects that the transfer of an employer's contribution rate to a successor asset purchaser is really an attempt to recover the money that the predecessor employer would have paid if it had continued in business.[8] The liability for the increased rate thus follows any purchase of substantially all of the assets of an employer. The transfer of those assets alone, not the continuation of the Debtor's business, is sufficient to trigger the imposition of successor liability on a purchaser.[9] As the bankruptcy court correctly observed in its Memorandum of Decision:

---

8. At oral argument, the DUA asked that the Panel vacate and remand the matter to the bankruptcy court for a determination on whether all of an unknown number of elements that make up the difference between the entry level rate and the Debtor's higher experience rating are applicable to OPK. The DUA, however, did not raise any such issue in the bankruptcy court proceedings, and cannot raise them for the first time on appeal. *See Back Bay Spas, Inc. v. 441 Stuart Mktg., LLC,* 688 F.3d 61, 62 (1st Cir.2012) (stating "legal theories not raised squarely in the lower court cannot be broached for the first time on appeal").

9. Under the statute, successor liability may be imposed if "the entire organization, trade *or* business of an employer, or substantially all of the assets thereof, are transferred to another employer." Mass. Gen. Laws ch. 151A, § 14(n)(1) (emphasis added).

... [T]here is a good reason to view this right as an interest in estate assets: it imposes a debtor's experience rating on the buyer precisely because, and only because, the buyer purchased assets of the bankruptcy estate. By operation of the state statute, the debtor's experience rating travels with the assets and encumbers their purchaser.

*PBBPC,* 467 B.R. at 9. Indeed, here, as in *Chrysler* and *Trans World Airlines,* the possibility of transferring assets free and clear of successor liability was a critical inducement to the sale. Because the right to tax at the higher successor rate arose from the sale of the Debtor's property, § 363(f) permitted the bankruptcy court to authorize the sale free and clear of that rate.

Although *Wolverine Radio, supra,* is factually similar to the case before us, like the bankruptcy court below, we find the rationale of that decision unpersuasive. There, the Sixth Circuit framed the issue as whether the bankruptcy court may determine the tax rate applicable to the successor entity and, concluded that an employer's contribution rate was not an interest in property under § 363. In this case, however, the bankruptcy court is not setting the tax rate. Rather, the DUA has two rates that it could impose: a new employer rate or the Debtor's rate. Applying the Debtor's rate as a successor is clearly intended to recover for the benefit of the Commonwealth, and other employers, sums that the Debtor would have paid had it remained in business. Since the motivation and underlying rationale for the successor rate structure is to recover money from the purchaser of the Debtor's assets for the benefit of the state and other employers, it is an inter-

est in the property sold. Like the court in *Leckie,* "we find no legal basis for [the] argument that, as a general matter, property cannot be sold to an unrelated third party free and clear of a debtor's future tax obligations." 99 F.3d at 586. Indeed, "the Code itself articulates no such restriction[.]" [10] *Id.*

### CONCLUSION

For the foregoing reasons, the Order is **AFFIRMED.**

---

10. Because the DUA does not challenge the correctness of the bankruptcy court's conclusion that § 363 preempts the successor liability provisions of the Massachusetts unemployment insurance statute, we do not address that issue here.