[Cite as *Pennex Aluminum Co., L.L.C. v. Ohio Dept. of Job & Family Servs.*, 2014-Ohio-5308.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Pennex Aluminum Company, LLC,          :

      Appellant-Appellee,          :

                        No. 14AP-446

v.          :          (C.P.C. No. 12CV-12544)

Director, Ohio Department of Job          :          (REGULAR CALENDAR)
& Family Services,

                           :

      Appellee-Appellant.          :

                           :

## D E C I S I O N

### Rendered on November 28, 2014

*Fisher & Phillips, LLC*, and *Samuel N. Lillard*, for appellee.

*Michael DeWine*, Attorney General, and *Patria V. Hoskins*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Appellee-appellant, Ohio Department of Job and Family Services, ("ODJFS"), appeals from a decision of the Franklin County Court of Common Pleas reversing a determination of the Ohio Unemployment Compensation Review Commission ("UCRC") that found appellant-appellee, Pennex Aluminum Company, LLC ("Pennex"), was a successor in interest to GEI of Columbiana, Inc. ("GEI Columbiana") for purposes of determining Pennex's unemployment contribution rate as an Ohio employer. For the reasons that follow, the judgment of the trial court is affirmed.

## I. BACKGROUND

{¶ 2}   Pennex, a supplier of custom aluminum extrusions, fabrication services, and aluminum billets, is headquartered in Wellsville, Pennsylvania.   According to the testimony of Pennex President and CEO, Rick Merluzzi, Pennex remelts scrap aluminum, casts the melted aluminum into bars called billets, and through the process of extrusion, uses the billets to produce shaped objects.   Value is added to the extruded aluminum objects by creating finished fabrication products for Pennex's customers.

{¶ 3}   General Extrusions, Inc. ("General Extrusions") is the parent company for GEI Columbiana and GEI Corporation of Ohio ("GEI Ohio").   In 2010, General Extrusions operated two extrusion facilities, one in Youngstown, Ohio and one in Leetonia, Ohio. Pennex, who was operating two aluminum extrusion plants in Pennsylvania, sought to expand its capabilities and obtain another facility that contained a larger press.   Pennex became aware of General Extrusions's interest in selling its Leetonia facility, which was jointly owned by GEI Columbiana and GEI Ohio.

{¶ 4}   On August 31, 2010, through its parent holding company Lefton Metal Acquisitions, LLC, Pennex entered into an Asset Purchase Agreement with GEI Columbiana, GEI Ohio, General Extrusions' majority shareholders, General Extrusions' president and CEO, Herbert Schuler, Jr., and General Extrusions' founder, Herbert Schuler, Sr.   On July 2, 2011, ODJFS notified Pennex of its determination that, under R.C. 4141.24(F), Pennex was a successor in interest to GEI Columbiana, and, therefore, Pennex was required to pay GEI Columbiana's unemployment compensation contribution rates. Specifically, ODJFS determined that Pennex's contribution rates would be 4.3 percent for 2010 and 8.8 percent for 2011.   On August 1, 2011, Pennex sought reconsideration from the director of ODJFS, who affirmed ODJFS's initial determination.

{¶ 5}   Thereafter, Pennex appealed to the UCRC, and a hearing was conducted by telephone.   Pennex presented the affidavit and direct testimony of Merluzzi, and ODJFS presented the testimony of its employee, Catharina Bester.   According to Merluzzi, Pennex acquired only the Leetonia facility, and General Extrusions has continued its operation of the Youngstown facility.   Additionally, Merluzzi stated that Pennex did not purchase all of the assets of the Leetonia facility and, pursuant to the Asset Purchase Agreement, GEI Columbiana and GEI Ohio kept not only the Youngstown facility, but also Leetonia's

customers, work in progress, and inventory other than billet. By decision rendered September 6, 2012, the UCRC affirmed ODJFS's previous determinations that Pennex was a successor in interest to GEI Columbiana for purposes of ascertaining Pennex's unemployment compensation contribution rates.

{¶ 6} Pursuant to R.C. Chapter 4141, Pennex appealed the UCRC's determination to the Franklin County Court of Common Pleas. In the trial court, Pennex argued UCRC's decision was not supported by substantial evidence and was not in accordance with law. Specifically, Pennex asserted it was undisputed that Pennex purchased only one of GEI Columbiana's facilities and that Pennex did not purchase GEI Columbiana's inventory (excluding billet), customer lists, work in progress, accounts receivable, employee personnel records, and assets of its employee plans. Pennex also noted that upon its purchase of the Leetonia facility, all of the employees were terminated with the understanding that Pennex would rehire the workers willing to return. For all these reasons, Pennex argued it could not be considered a successor in interest of GEI Columbiana under R.C. 4141.24(F).

{¶ 7} In contrast, ODJFS argued R.C. 4141.24(F) requires the purchase of all the trade or business, not the acquisition of all the seller's assets. According to ODJFS, the acquisition of the Leetonia facility's tangible personal property, including all machinery, equipment, tools, furniture, office equipment, computer hardware, supplies, materials, and vehicles, constituted a transfer of all of GEI Columbiana's trade or business. Additionally, ODJFS argued that the excluded assets set forth in the Asset Purchase Agreement did not consist of real, personal, and tangible property relevant to the ongoing business but, rather, consisted of property generally retained by a seller.

{¶ 8} After review, the trial court found the undisputed evidence established that Pennex did not acquire the aluminum extrusion plant in Youngstown, Ohio, nor did Pennex acquire the accounts receivable, existing contracts with customers, work in progress or inventory other than existing aluminum billet. Accordingly, by judgment rendered May 21, 2014, the trial court concluded UCRC's decision, that Pennex was a successor in interest to GEI Columbiana for purposes of determining Pennex's unemployment compensation contribution rate, was not supported by reliable, probative,

and substantial evidence, and the trial court reversed the decision of the UCRC. This appeal followed.

## II.  ASSIGNMENT OF ERROR

{¶ 9}  Appellant sets forth the following assignment of error:

> The Franklin County Court of Common Pleas erred in reversing the decision of the Unemployment Compensation Review Commission ("UCRC"), as its decision that Pennex Aluminum Company, LLC is a successor in interest to GEI of Columbiana, Inc. is supported by reliable, probative, and substantial evidence and is in accordance with the law.

## III.  STANDARD OF REVIEW

{¶ 10}  The standard of review for appeals from decisions of the UCRC is found in R.C. 4141.26(D)(2), which states that a common pleas court may affirm UCRC's decision where it is "supported by reliable, probative, and substantial evidence and is in accordance with law."  A court of appeals' review of an administrative agency's ruling "is more limited than that of a common pleas court.  This court does not weigh the evidence." *Kate Corp. v. Ohio State Unemp. Comp. Rev. Comm.*, 10th Dist. No. 03AP-315, 2003-Ohio-5668, ¶ 7, citing *Childs v. Oil & Gas Comm.*, 10th Dist. No. 99AP-626 (Mar. 28, 2000), citing *Lorain City Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257 (1988).  Although appellate courts are not permitted to make factual findings or weigh the credibility of the witnesses, the court does have a duty to determine whether the board's decision is supported by the evidence in the record.  *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696 (1995).  Administrative agencies have discretion to promulgate and interpret their own rules, and a reviewing court should give due deference to statutory interpretations by an administrative agency that has substantial experience and been delegated enforcement responsibility.  *Weiss v. Pub. Util. Comm.*, 90 Ohio St.3d 15, 17-18 (2000), citing *Collinsworth v. W. Elec.* Co., 63 Ohio St.3d 268, 272 (1992).

{¶ 11}  Thus, a court of appeals determines only if the common pleas court abused its discretion.  *Tzangas* at 696-97.  In successor-in-interest cases, "this court has defined 'abuse of discretion' as connoting more than an error in judgment, but implying a decision that is without a reasonable basis and clearly wrong."  *All Star Personnel, Inc. v. Unemp.*

*Comp. Rev. Comm.*, 10th Dist. No. 05AP-522, 2006-Ohio-1302, ¶ 13, quoting *WLS Stamping Co., Inc. v. Admr., Ohio Bur. of Emp. Servs.*, 10th Dist. No. 93AP-278 (Dec. 14, 1993), citing *Angelkovski v. Buckeye Potato Chips Co.*, 11 Ohio App.3d 159 (10th Dist.1983).

## IV. DISCUSSION

{¶ 12} Pursuant to R.C. 4141.09, every employer in the state must make contributions to the unemployment compensation fund. Generally, R.C. 4141.24(F) provides two methods by which an employer may qualify as a successor in interest for purposes of determining the unemployment compensation contribution rates: (1) by operation of law or (2) through voluntary application. Because Pennex did not file an application to obtain successor-in-interest status, this appeal only concerns whether Pennex acquired successor-in-interest status by operation of law. R.C. 4141.24(F) reads in part:

> If an employer transfers all of its trade or business to another employer or person, the acquiring employer or person shall be the successor in interest to the transferring employer and shall assume the resources and liabilities of such transferring employer's account, and continue the payment of all contributions, or payments in lieu of contributions, due under this chapter.

{¶ 13} Under the Ohio Administrative Code, a transferee is a successor in interest by operation of law where "(1) [t]here is a transfer of all of the transferor's trade or business located in the state of Ohio; and (2) [a]t the time of the transfer the transferor is liable under Chapter 4141. of the Revised Code." Ohio Adm.Code 4141-17-04(A)(1) and (2). As it existed at times relevant to this litigation, the Ohio Administrative Code stated that for the purposes of R.C. 4141.24, " '[t]rade or business' includes all real, personal and intangible property used in the operation of the trade or business and includes the employer's workforce." Ohio Adm.Code 4141-17-01(A).[1]

{¶ 14} ODJFS argues that because Pennex acquired all of the assets related to the operation of GEI Columbiana's trade or business and because Pennex employed

---

[1] Though not applicable here, Ohio Adm.Code 4141-17-01(A) was modified effective July 25, 2013 and said rule now reads, " '[t]rade or business' includes all real, personal and intangible property integral to the operation of the trade or business, and may include the employer's workforce as applicable."

substantially the same individuals who were employed by GEI Columbiana, the UCRC did not err in finding that, by operation of law, Pennex is a successor in interest to GEI Columbiana. In contrast, appellee asserts the evidence demonstrates that Pennex did not acquire all of GEI Columbiana's trade or business, and, therefore, the trial court did not err in concluding that Pennex is not GEI Columbiana's successor in interest by operation of law.

{¶ 15} The Asset Purchase Agreement states in relevant part:

2. SALE AND TRANSFER OF ASSETS; CLOSING.

2.1. Assets to be Sold. Upon the terms and subject to the conditions set forth in this Agreement, at the Closing, but effective as of the Effective Time, Seller shall sell, convey, assign, transfer and deliver to Buyer, and Buyer shall purchase and acquire from Seller, free and clear of any Encumbrances other than Permitted Encumbrances, all of Seller's right, title and interest in and to all property and assets, real, personal or mixed, tangible and intangible, of every kind and description, wherever located, used in the current operations of the Seller at Leetonia, Ohio, including the following, except for the Excluded Assets and except for assets or Seller Contracts that Buyer informs Seller in writing prior to the Closing that it does not intend to acquire (other than (i) that certain Customer Supply Agreement dated September 28, 2009 by and between FirstEnergy Solutions Corp. and General Extrusions, Inc.; and (ii) that certain Aim Dedicated Operating Agreement dated March 3, 2005, that certain Aim Dedicated Operating Agreement dated October 1, 2004, that certain Aim Vehicle Service Lease dated August 21, 2001, each by and between Aim Leasing Drivers Company and GEI of Columbiana, Inc., which shall be assumed by the Buyer if FirstEnergy Solutions Corp. and Aim Leasing Drivers Company consent to the assignment of such agreements to the Buyer):

(a) all Tangible Personal Property, including those items described in Part 2.1(a);

(b) all Billet;

(c) all Seller Contracts listed in Part 3.18(a), and all outstanding offers or solicitations made by or to Seller to enter into any Contract;

(d) all Governmental Authorizations and all pending applications therefor or renewals thereof, in each case to the extent transferable to Buyer, including those listed in Part 3.15(b);

(e) all data and Records related to the operations of Seller, including client and customer lists and Records, referral sources, research and development reports and Records, production reports and Records, service and warranty Records, equipment logs, operating guides and manuals, financial and accounting Records, creative materials, advertising materials, promotional materials, studies, reports, correspondence and other similar documents and Records and, subject to Legal Requirements, copies of all personnel Records and other Records described in Section 2.2(i);

(f) all of the intangible rights and property of Seller used in the Leetonia, Ohio business, including Intellectual Property Assets, going concern value, goodwill, telephone, telecopy and e-mail addresses and listings and those items listed in Part 3.23(a);

(g) all insurance benefits, including rights and proceeds, arising from or relating to the Assets or the Assumed Liabilities prior to the Effective Time, unless expended in accordance with this Agreement;

(h) all claims of Seller against third parties relating to the Assets, whether choate or inchoate, known or unknown, contingent or noncontingent;

(i) all rights of Seller relating to deposits and prepaid expenses, claims for refunds and rights to offset in respect thereof related to any liabilities assumed by Buyer;

(j) the Real Property; and

(k) all other properties and assets of every kind, character and description, tangible or intangible, used or held for use in connection with the Seller's Leetonia, Ohio business, whether or not similar to the items specifically set forth above, except the Excluded Assets.

All of the property and assets to be transferred to Buyer are referred to collectively as the "Assets." The transfer of the Assets pursuant to this Agreement shall not include the

assumption of any Liability related to the Assets unless Buyer expressly assumes that Liability pursuant to Section 2.3(a).

2.2 Excluded Assets. The following assets of Seller (collectively, the "Excluded Assets") are not part of the sale and purchase contemplated hereunder, are excluded from the Assets and shall remain the property of Seller after the Closing:

(a) all cash in an amount exceeding the aggregate amount of case equivalents and short-term investments;

(b) all Inventory, other than Billet;

(c) all work in progress;

(d) all Accounts Receivable;

(e) all minute books, stock Records and corporate seals;

(f) the shares of capital stock of Seller held in treasury;

(g) all insurance policies and rights thereunder (except to the extent specified in Section 2.1(g) and (h)), and all prepaid insurance;

(h) the Seller Contracts listed in Part 2.2(h);

(i) all personnel Records and other Records that Seller is required by law to retain in its possession;

(j) all claims for refund of Taxes and other governmental charges of whatever nature;

(k) all rights in connection with and assets of the Employee Plans;

(l) all rights of Seller under this Agreement, the Bill of Sale, and the Assignment and Assumption Agreement; and

(m) the right to use of the corporate names "GEI of Columbiana, Inc." and ["]GEI Corporation of Ohio" for the sole purpose of winding down the Seller's business.

{¶ 16} R.C. 4141.24(F) unambiguously provides that successor-in-interest status arises automatically if "an employer transfers all of its trade or business to another employer."  As the trial court held, the undisputed evidence presented herein demonstrates that GEI Columbiana and GEI Ohio each had overlapping ownership interests in both the Youngstown and Leetonia extrusion facilities.  It is also undisputed that Pennex purchased only the Leetonia facility and that the Youngstown facility continued in its operation.  The employment of all the employees at the Leetonia facility was terminated with the option of being rehired by Pennex if they chose to do so.  Additionally, Merluzzi's affidavit states that while Pennex targeted new clients and some former clients of General Extrusions, "those customers that could be serviced by General Extrusions at its Youngstown facility generally stayed with General Extrusions.  After the sale, there were several customers who needed the larger profiles the Leetonia facility press could provide and wanted to continue to be supplied by General Extrusions. In many of those situations, Pennex agreed to sell the larger profiles produced at the Leetonia facility to General Extrusions who then resold them to the customer."  (Affidavit, 4.)  Also, as set forth in the list of excluded assets, Pennex did not acquire the customer lists, the inventory (other than billet), work in progress, accounts receivable, assets of employee plans, and employee personnel records from the Leetonia facility.

{¶ 17} Given the undisputed evidence presented here, we perceive no abuse of discretion in the trial court's determination that, under R.C. 4141.24(F), not all of GEI Columbiana's trade or business was transferred to Pennex such that Pennex was not a successor in interest by operation of law.  Accordingly, appellant's assignment of error is overruled.

## V.  CONCLUSION

{¶ 18} Having overruled appellant's single assignment or error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

_____