THE STATE, EX REL. MILLER, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.; GOODYEAR TIRE & RUBBER COMPANY, APPELLANT.

[Cite as State, ex rel. Miller, *v.* Indus. Comm. (1986), 26 Ohio St. 3d 110.]

(No. 85-1524—Decided August 20, 1986.)

*Jaffy, Livorno, Kaufmann & Arnett Co., L.P.A., Stewart R. Jaffy, John F. Livorno* and *Henry A. Arnett,* for appellee.

*Vorys, Sater, Seymour & Pease* and *Robert E. Tait,* for appellant.

*Per Curiam.* The sole issue in this case is whether the Atomic Energy Act of 1954 preempts the Industrial Commission from considering the merits of appellee's application for an additional award for a specific safety violation. The doctrine of federal preemption has its roots in the Supremacy Clause of the United States Constitution, in Article VI, which states in pertinent part:

"This Constitution, and the Laws of the United States which shall be made in pursuance thereof; * * * shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding."

There are generally three tests for federal preemption. Congress may expressly preempt state authority in a given area. *Jones* v. *Rath Packing Co.* (1977), 430 U.S. 519. Absent express preemption, where state law conflicts with or frustrates federal law or its objectives, federal law may supersede state law. *Florida Lime & Avocado Growers, Inc.* v. *Paul* (1963), 373 U.S. 132. Additionally, if a scheme of federal regulations is so pervasive as to leave no room for the states to supplement it, federal preemption may be found. *Rice* v. *Santa Fe Elevator Corp.* (1947), 331 U.S. 218.

The state authority involved in the instant case is the Industrial Commission and its specific safety requirements. The federal law which allegedly preempts the Industrial Commission from applying its specific safety requirements is the Atomic Energy Act of 1954, Section 2011 *et seq.,* Title 42, U.S. Code. The United States Supreme Court discussed the preemption doctrine in the context of the Atomic Energy Act of 1954 in

the recent case of *Silkwood* v. *Kerr-McGee Corp.* (1984), 464 U.S. 238. The *Silkwood* court held at 256-257:

"* * * [I]nsofar as damages for radiation injuries are concerned, pre-emption should not be judged on the basis that the Federal Government has so completely occupied the field of safety that state remedies are foreclosed but on whether there is an irreconcilable conflict between the federal and state standard or whether the imposition of a state standard in a damages action would frustrate the objectives of federal law."

Nowhere in the Atomic Energy Act has Congress expressly preempted state authorities from applying workers' compensation safety requirements to protect workers at nuclear power plants against safety hazards unrelated to radiation. Similarly, the specific safety requirements embodied in Ohio workers' compensation law do not conflict with or frustrate the Atomic Energy Act of 1954 or its objectives.

The question which remains is whether the scheme of federal regulations set forth in the Atomic Energy Act is so pervasive as to leave no room for state supplementation. The intent of Congress in promulgating the Atomic Energy Act was to provide regulation and controls necessary to minimize hazards inherent to the production of nuclear power. As recognized by the *Silkwood* court, that Act does not completely occupy the field of safety at nuclear production facilities. The Atomic Energy Act does not even address the basic safety precautions necessary to protect workers in any manufacturing plant. The instant case involves an injury to a worker because of an allegedly defective scaffold. It could not have been the intent of Congress to allow the state of Ohio to protect every worker who uses a scaffold, except those workers who use scaffolds at atomic energy plants. Since the entire field of safety at nuclear production facilities is not regulated by the Atomic Energy Act, the court of appeals was correct in concluding that the Industrial Commission is not preempted from applying Ohio's specific safety requirements in the case at bar.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

WRIGHT, J., dissents.

WRIGHT, J., dissenting. As the majority expressed, the Supremacy Clause of the United States Constitution operates to preempt state regulation where there is a direct expression of preemptive congressional intent, *Campbell* v. *Hussey* (1961), 368 U.S. 297; *Pacific Gas & Elec. Co.* v. *State Energy Resources Conserv. & Dev. Comm.* (1983), 461 U.S. 190, where congressional intent is implied, *Burbank* v. *Lockheed Air Terminal* (1973), 411

U.S. 624; *Bhd. of RR. Trainmen* v. *Jacksonville Terminal Co.* (1969), 394 U.S. 369, or where there is a conflict between federal and state regulations, *Perez* v. *Campbell* (1971), 402 U.S. 637; *Hines* v. *Davidowitz* (1941), 312 U.S. 52.

What apparently escapes the majority's scrutiny is that, where the attempted state regulation involves a federal facility, state regulation is permitted "only when and to the extent there is 'a clear congressional mandate,' * * * that makes this authorization of state regulation 'clear and unambiguous.' " *Hancock* v. *Train* (1976), 426 U.S. 167, 179. See *Kern-Limerick, Inc.* v. *Scurlock* (1954), 347 U.S. 110; *United States* v. *United Mine Workers* (1947), 330 U.S. 258; *M'Culloch* v. *Maryland* (1819), 17 U.S. (4 Wheat.) 316, 426. In *Hancock* v. *Train, supra,* the United States Supreme Court stated, "this immunity means that where 'Congress does not affirmatively declare its instrumentalities or property subject to regulation,' 'the federal function must be left free' of regulation." *Id.* at 179. No such congressional exception exists with respect to the Portsmouth Gaseous Diffusion plant. It has been held that any state or private activity that attempts to regulate, supervise, or in any way deal with the safety and health aspects of such facilities is *per se* invalid. See *Pacific Gas & Elec. Co., supra; Northern States Power Co.* v. *Minnesota* (C.A. 8, 1971), 447 F. 2d 1143, affirmed (1972), 405 U.S. 1035; *Suffolk* v. *Long Island Lighting Co.* (C.A. 2, 1984), 728 F. 2d 52.

In the instant case, the Atomic Energy Act ("the Act") requires federal government ownership of and exclusive jurisdiction over nuclear production facilities. Section 2061, Title 42, U.S. Code, provides: "(a) the Commission [the Department of Energy ("DOE")] as agent of and on behalf of the United States, shall be the exclusive owner of all production facilities * * *. (b) * * * To the extent deemed necessary, the Commission [DOE] is authorized to make, or to continue in effect, contracts with persons obligating them to produce special nuclear material and facilities owned by the Commission. * * * Any contract entered into under this section shall contain provisions * * * obligating the contractor * * * to comply with all safety and security regulations which may be prescribed by the Commission [DOE]. * * *" Clearly, all regulation of the Portsmouth plant is within the exclusive province of the United States, and any state intrusion into that area is absolutely prohibited absent a "clear congressional mandate" to the contrary. *Hancock, supra,* at 179.

In granting the writ of mandamus and finding no preemption, the majority confuses the exclusivity granted DOE in the regulation of health and safety at its federally owned, contractor-operated facilities with the more limited authority granted the Nuclear Regulatory Commission ("NRC") over *nonfederally owned* nuclear power plants. Section 2021, Title 42, U.S. Code, authorizes the establishment of regulatory agreements between the NRC (formerly the Atomic Energy Commission ["AEC"]) and the states. Senate Report No. 870, 86th Cong. 1st Session, 1959 U.S. Code Congres-

sional and Administrative News 2872, 2875, 2879. In that context, Section 2021(k) provides, "[n]othing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards." See, also, *Silkwood* v. *Kerr-McGee Corp.* (1984), 464 U.S. 238. Recognizing the inherent limitations of the Act, the United States Supreme Court has held that Section 2021(k) "does not represent an affirmative grant of power to the states," *Pacific Gas & Elec. Co., supra,* at 210, and in no way disturbs the rights and prerogatives granted the federal government under Sections 2061, 2201(e), and 2201(i), Title 42, U.S. Code. Further, Section 2021(c)(1) specifically excepts from its application any nuclear "production or utilization facility," such as the Portsmouth plant. That section states: "No agreement entered into pursuant to subsection (b) of this section shall provide for discontinuance of any authority and the Commission shall retain authority and responsibility with respect to regulation of — (1) the construction and operation of any production or utilization facility." Any reliance upon Section 2021 as support for the majority's determination is clearly misplaced.

In *Pacific Gas & Elec. Co., supra,* the United States Supreme Court outlined the parameters of federal preemption under the Act as follows: "State safety regulation is not pre-empted only when it conflicts with federal law. Rather, the Federal Government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the States. When the Federal Government completely occupies a given field or an identifiable portion of it, as it has done here, the test of pre-emption is whether 'the matter on which the State asserts the right to act is in any way regulated by the Federal Act.' " *Id.* at 212-213.

The specific safety requirements that Miller seeks to have imposed on the Portsmouth plant fall squarely within an area regulated by the federal government. In the Act, Congress mandated the development of comprehensive federal safety regulations, and through Orders 5481, 5482, and 5483, DOE had promulgated both radiological and nonradiological standards specifically applicable to its federally owned, contractor-operated facilities. In addition, the Goodyear contract itself at Article XX contains an express provision requiring compliance "with all applicable safety and health regulations and requirements * * * of DOE" and prescribing the right to work stoppage if compliance is not effected.

In the Atomic Energy Act, Congress did not express an intention to delegate to the states any of the regulatory authority granted to DOE and, with respect to production facilities, mandated that sole regulatory control remain with the United States. As a federally owned facility, the Portsmouth plant is under the exclusive control of DOE and the imposition of any state-promulgated regulations on that operation, including Ohio specific safety requirements, is constitutionally and statutorily impermissible. The Industrial Commission was manifestly correct in finding that it

lacked jurisdiction to consider Miller's application. The issuance of the writ is clearly improper. The decision of the court of appeals should be reversed.

Accordingly, I respectfully dissent.